UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENTREL J.,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§ Case # 1:21-cv-197-DB<br>§<br>§ MEMORANDUM<br>§ DECISION AND ORDER<br>§ |

## INTRODUCTION

Plaintiff Kentrel J. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on June 25, 2018, alleging disability beginning June 28, 1990 (the disability onset date), due to mental health, depression, bipolar disorder, and attention deficit hyperactive disorder. Transcript ("Tr.") 16, 168-69, 140-46, 162. Plaintiff's claim was denied initially on October 9, 2018, after which Plaintiff requested an administrative hearing. Tr. 16, 75-79, 81. On March 10, 2020, Administrative Law Judge Michael

J. Stacchini ("the ALJ") conducted a telephonic hearing.[1] Tr. 16. Plaintiff appeared and testified at the hearing and was represented by Katheryn Eastman, an attorney. *Id*. Patricia Scutt, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on August 3, 2020, finding that Plaintiff was not disabled. Tr. 16-27. On December 3, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's August 3, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York,* 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15, 312.

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 3, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since June 25, 2018, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: anxiety, depression, personality disorder, attention-deficit/hyperactivity disorder ("ADHD"), posttraumatic stress disorder ("PTSD"), and asthma (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant must avoid concentrated exposure to atmospheric conditions. The claimant can understand, remember and carry out simple, routine tasks with regularly scheduled breaks at 2-hour intervals. The claimant can make decisions and respond to changes in the work setting relating to simple, routine tasks. The claimant can occasionally interact with the general public, coworkers, and supervisors.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 28, 1990 and was 28 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 25, 2018, the date the application was filed (20 CFR 416.920(g)).

Tr. 16-26.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on June 25, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 27.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ failed to properly evaluate the opinion of consultative psychological examiner Adam Brownfeld, Ph.D. ("Dr. Brownfeld"). *See* ECF No. 7-1 at 6-12. According to Plaintiff, the ALJ failed to incorporate Dr. Brownfeld's assessment of marked limitations in the RFC, "in an obvious picking and choosing of the opinion evidence," and therefore, substituted his own lay judgment for Dr. Brownfeld's opinion. *See id*.

The Commissioner argues in response that the ALJ properly assessed Dr. Brownfeld's opinion in accordance with the regulations and credited only those limitations that were consistent with and supported by the record. *See* ECF No. 9-1 at 10-13. Furthermore, argues the Commissioner, the ALJ did not rely exclusively or excessively on any one factor when he evaluated Plaintiff's RFC, and substantial evidence supports the ALJ's RFC determination. *See id*. at 13-17.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly accounted for Dr. Brownfeld's opinion that Plaintiff had no limitations understanding, remembering, and applying simple instructions, making judgment on simple work-related decisions, and responding appropriately to usual work situations and changes in a routine work setting by limiting Plaintiff to understanding, remembering, and carrying out simple, routine tasks and making decisions and responding to changes in the work setting relating to simple, routine tasks. The ALJ also properly accounted for moderate limitations interacting with others by limiting Plaintiff to jobs requiring no more than occasional interaction with the general public, coworkers, and supervisors. The ALJ explained his reasons for finding Dr. Brownfeld's suggestion of marked limitations interacting with others "excessive" and inconsistent with the record. Furthermore, the ALJ also relied on other substantial evidence to reach his RFC finding, including mental health examinations showing generally unremarkable findings, treatment records indicating that Plaintiff had only intermittently attended psychotherapy and had no psychiatric hospitalizations or emergency room visits for mental health symptoms, and Plaintiff's daily activities. Accordingly, the Court finds no error.

Plaintiff alleged disability due to a combination of psychological symptoms and limitations, including difficulty being around crowds and interacting with others, panic attacks, mood swings, irritability, restlessness, poor sleep, fatigue, lack of motivation or interest, and difficulties with memory and sustaining concentration. Tr. 49-50, 213, 266-67. The record documents diagnoses of major depressive disorder, generalized anxiety disorder, personality disorders, and PTSD. Tr, 256-64, 269, 443, 479-525.

Plaintiff reported a history of incarceration from 2008 to 2018, including being reincarcerated for parole violations. Tr. 489. On May 4, 2018, Plaintiff underwent a health screening with the Department of Corrections. Tr. 228-33. He reported past mental health

treatment, but he had no current mental health complaints, and his mental health findings were unremarkable. Tr. 229. Plaintiff also declined medications for depression and anxiety, stating "I'm good." Tr, 234.

In August 2018, Plaintiff attended pre-admission screening with Genesee Mental Health Center. Tr. 257. He was declined admission due to multiple no show/late cancellation for scheduled appointments. *Id*.

On October 31, 2019, Dr. Brownfeld performed a consulting psychiatric evaluation at the request of the state agency. Tr. 266. On mental status examination, Plaintiff's speech was fluent and monotonous; his mood was euthymic; his attention and concentration and recent and remote memory were intact; and insight and judgment were fair. Tr. 267. Dr. Brownfeld diagnosed PTSD, major depressive disorder, and cannabis use disorder in sustained remission. Tr. 269. He opined that Plaintiff had no limitations in understanding, remembering, and applying simple and complex directions and instructions, using reason and judgment to make work-related decisions, sustaining concentration, and performing a task at a consistent pace. Tr. 268. Plaintiff was also able to sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions without limitations. *Id*. Dr. Brownfield further opined that Plaintiff was moderately to markedly limited in interacting adequately with supervisors, co-workers, and the public and regulating emotions, controlling behavior, and maintaining well-being" and stated the results of the evaluation appeared "consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis." Tr. 269. He also opined that Plaintiff's "symptoms of PTSD affect interpersonal skills." Tr. 271.

In December 2019, Plaintiff began mental health treatment at Unity Mental Health at Evelyn Brandon ("Brandon"). Tr. 519-20. Thereafter, it appears that Plaintiff attended regular therapy sessions at Brandon through June 2020, some of which were teletherapy visits. Tr. 479-520. Therapy notes reflect no record of medications for any mental health conditions (*see* Tr. 489, 495, 499, 504-07) until May 28, 2020, when Plaintiff was prescribed mirtazapine for insomnia (Tr. 490).

On March 2, 2020, Plaintiff reported his mood was better since beginning a full-time job, and he stated he was beginning a second job with potential for full-time overnight hours. Tr. 500. He expressed excitement and stated that working makes him feel accomplished, proud, and self-sufficient. *Id*. In a teletherapy session on March 17, 2020, Plaintiff reported feeling depressed and lonely (Tr. 496), and on May 5, 2020, he reported his anxiety has been "terrible," and he endorsed depressed mood, difficulty managing anger, difficulty concentrating, and interrupted sleep (Tr. 492). However, mental status examinations on both visits were generally unremarkable; he was fully oriented with intact thought processes; he had fair insight and good judgment; and no thoughts of harm to self or others. Tr. 492, 496.

On May 18, 2020, Plaintiff presented to the Emergency Department ("ED") at Rochester Regional Health complaining of "fullness in the left pectoralis muscle region" with "some pain." Tr. 449. He denied any trauma or injury to the region. *Id*. During triage, Plaintiff denied any depression or thoughts of suicide over the past two weeks. Tr. 452. He also denied any suicide attempts over his lifetime. *Id*. X-rays were normal, and Plaintiff was discharged with anti-inflammatory medications. Tr. 449.

During a visit at Brandon on May 28, 2020, Plaintiff reported increased anxiety and depression after losing his job in April 2020. Tr. 489. Plaintiff stated it was "important to him to

8

have a job and be able to pay for what he needs. *Id*. He also reported a history of suicide attempts but no current suicidal ideation, plans or intent. Tr. 488. His provider noted that "[Plaintiff's] responses did not appear to be indicative of psychosis." Tr. 489. Plaintiff was prescribed mirtazapine for insomnia. Tr. 490.

As noted above, Plaintiff argues that the ALJ erred in his assessment of the medical opinion evidence, resulting in an RFC finding that was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record

9

contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on June 25, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

11

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's argument (*see* ECF No. 7-1 at 6-12), the ALJ's decision demonstrates that he properly evaluated Dr. Brownfeld's opinion (Tr. 266-72) and provided an adequate explanation for finding it "somewhat persuasive overall." Tr. 24-25. First, the ALJ cited

20 C.F.R. § 416.920c(c) and noted that he considered the persuasiveness of medical opinions based on the factors of supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors. Tr. 24. *See* 20 C.F.R. § 416.920c(c). Next, when discussing Dr. Brownfeld's opinion, the ALJ recognized that Dr. Brownfeld conducted a psychological consultative examination of Plaintiff in October 2019, which demonstrates that the ALJ considered the factors of relationship with the claimant and specialization. *See* 20 C.F.R. 416.920c(c)(3)-(4).

The ALJ also noted that Dr. Brownfeld's assessment was based on a thorough examination and cogent observations that were generally consistent with the mental status and psychiatric findings in the record, as well as Plaintiff's reported activities of daily living. Tr. 24-25, 268. *See Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("[S]ubstantial evidence of routine activities" properly found to be inconsistent with claims of total disability). For instance, the ALJ noted that Dr. Brownfeld's findings of intact cognitive skills, memory, and concentration supported his opinion regarding Plaintiff's ability to carry out and perform simple directions and instructions, make decisions, and maintain concentration and pace. Tr. 24-25, 267-68. *See* 20 C.F.R. § 416.920c(b)(2). (supportability). The ALJ also noted that Plaintiff's social anxiety would support moderate limitations with social interactions. Tr. 25.

However, the ALJ found Dr. Brownfeld's assessment of marked limitations "excessive and inconsistent with the overall record," as well as inconsistent with Dr. Brownfeld's own examination findings that Plaintiff was pleasant, cooperative, alert, fully oriented, demonstrated appropriate eye contact, and exhibited normal speech, posture, and motor behavior. Tr. 25, 267-68. As the ALJ explained, Plaintiff's ability to go out independently, use public transportation, shop in stores, play basketball in the park, spend time with friends and family, maintain personal relationships, and live with others supported moderate rather than marked limitations. Tr. 24-25,

41, 45-46, 267-68, 271, 481, 487, 492, 496, 500, 504, 507, 515, 517. *See* 20 C.F.R. § 416.920c(b)(2) (consistency).

As previously noted, the new regulations only require the ALJ to explain his consideration of an opinion's supportability and consistency, which the ALJ did in this case. *See* 20 C.F.R. § 416.920c(b)(2)-(3). He thoroughly considered the record as a whole and reasonably determined that the record did not document or support any marked limitations interacting with others as Dr. Brownfeld's assessment suggested. Thus, the ALJ satisfied his duty to consider Dr. Brownfeld's opinion in accordance with the regulations and explained why he found it "somewhat persuasive overall." Tr. 24-25.

Furthermore, as explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Moreover, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental).

Contrary to Plaintiff's argument that the ALJ improperly substituted his own lay opinion in determining Plaintiff's RFC (*see* ECF No. 7-1 at 11-12), the ALJ's decision reflects that he properly considered a range of evidence, including Dr. Brownfeld's opinion, as discussed above. Furthermore, although the ALJ's RFC assessment did not adopt Dr. Brownfeld's opinion in its entirety, the ALJ nevertheless accounted for Dr. Brownfeld's supported limitations. Tr. 21, 24-25.

Plaintiff's claim that the ALJ "picked and chose among the limitations, rejecting all of the restrictive limitations and accepting the less restrictive limitations" is likewise without merit. *See* ECF No. 7-1 at 7. As previously noted, an ALJ's RFC determination need not parallel any particular medical opinion. *See Matta*, 508 F. App'x at 56. It is precisely the function of the ALJ to resolve conflicting evidence, and, as discussed above, the ALJ may find an opinion less persuasive where it is not consistent with or supported by other evidence of record, and likewise may rely on certain portions of opinions while rejecting others. *Veino*, 312 F. 3d at 588 (citing *Richardson*, 402 U.S. at 399): 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Here the ALJ properly considered the conflicting evidence and assessed the record as a whole to reach his RFC finding.

As the ALJ noted, Plaintiff's mental status examinations were generally unremarkable. Tr. 23. He was noted to have an appropriate appearance with good hygiene and grooming. Tr. 23, 257, 263, 267, 500. Despite some irritability, he was alert and fully oriented with a euthymic mood. Tr. 23, 267-68, 492, 496. There were no signs of psychosis. Tr. 489. Plaintiff was regarded as polite, pleasant, and cooperative; he maintained appropriate posture and eye contact; and he exhibited normal speech, behavior, and ability to relate during exams. Tr. 23, 256, 267, 496, 500. He was able to follow instructions and complete assigned tasks; he demonstrated intellectual functioning in the average range; and exhibited no gross defects with cognition, attention, or concentration.

*See id*. Plaintiff also demonstrated an intact memory, average fund of knowledge, fair insight and judgment, logical and coherent thought processes, and normal thought content without delusions or hallucinations. *Id*.

Additionally, the ALJ noted there was no evidence of any psychiatric hospitalizations or emergency room visits, and, overall, the record showed that Plaintiff had received routine and conservative mental health treatment, and his mental health symptoms were generally well controlled with medication. Tr. 23. *See* 20 C.F.R. §§ 404.1569(c)(3)(iv)- (v), 416.929(c)(3)(v) (the ALJ considers the treatment, other than medication, a claimant receives for relief of her symptoms). *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2013) (evidence of a conservative treatment regimen supported the ALJ's determination that plaintiff's symptoms were not as severe as she alleged); *see also Snyder v. Comm'r of Soc. Sec.*, 840 F. App'x 641, 643 (2d Cir. 2021) (conservative treatment may weigh against a disability finding) (internal citations omitted).

Furthermore, although not mentioned by the ALJ, the Court notes that Plaintiff reported in March 2020 that he was working two jobs. Tr. 500. Plaintiff also expressed excitement about working and believed it was important for him to have a job and pay for his own needs. Tr. 489, 500. While Plaintiff's work activity did not rise to the level of substantial gainful activity, it nonetheless indicates that Plaintiff's ability to perform work-related activities has, at least at times, been greater than Plaintiff alleged. *See* 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if the work a claimant had done was not substantial gainful activity, it may show that the claimant can do more work than he did). Based on the foregoing, the ALJ reasonably found that Plaintiff's mental symptoms are not at a level that would keep him from performing all work-related activities.

In sum, Plaintiff's argument here amounts to nothing more than an invitation for this Court to reweigh the evidence in a manner more favorable to him—arguments that are insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."). Plaintiff's argument, therefore, fails.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. As noted above, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original).

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence, or to argue that some evidence in the record could support his position; what he must show is that no reasonable factfinder could have reached the ALJ's conclusions on this record, which he has failed to do. *See Brault*, 683 F.3d at 448; *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might have reached a different conclusion). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the entire record including the medical opinion evidence, the treatment notes, and Plaintiff's reported daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE